1  Daniel C. Girard (State Bar No. 114826)
   dcg@girardgibbs.com
2  Jonathan K. Levine (State Bar No. 220289)
   jkl@girardgibbs.com
3  Aaron M. Sheanin (State Bar No. 214472)
   ams@girardgibbs.com
4  Christina H. C. Sharp (State Bar No. 245869)
   chc@girardgibbs.com
5  **GIRARD GIBBS LLP**
   601 California Street, Suite 1400
6  San Francisco, CA 94108
   Telephone:  (415) 981-4800
7  Facsimile:   (415) 981-4846

8  *Lead Counsel for Plaintiffs*

9

10              **UNITED STATES DISTRICT COURT**

11          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

12  RICHARD S. BONDAR, as Trustee of the      )
    Bondar Family Trust Dated 4/1/91, Individually )
13  And On Behalf of All Others Similarly Situated, )
14                                              )   **Case No. CV-08-2599 (JSW)**
    Plaintiff,                                  )
15                                              )
                   v.                           )   **DECLARATION OF AARON M.**
16                                              )   **SHEANIN IN SUPPORT OF**
    BANK OF AMERICA CORPORATION, BANC )          **ADMINISTRATIVE MOTION RE**
17  OF AMERICA INVESTMENT SERVICES, )            **ORDER APPOINTING LEAD**
    INC., and BANC OF AMERICA SECURITIES, )      **PLAINTIFF AND LEAD COUNSEL**
18  LLC,                                        )
                                                )
19                 Defendants.                  )
                                                )
20  _____ )

21

22

23

24

25

26

27

28

DECLARATION OF AARON M. SHEANIN

I, Aaron M. Sheanin, under penalty of perjury, hereby declare:

1.    I am a partner of Girard Gibbs LLP, Lead Counsel in the above-captioned action, and am admitted to practice in the Northern District of California.  I submit this declaration in support of the Administrative Motion re Order Appointing Lead Plaintiff and Lead Counsel.

2.    Attached hereto as **Exhibit A** is a true and correct copy the Order Vacating Order Granting Plaintiffs' Motion For Appointment As Lead Plaintiff And Approving Lead Plaintiffs' Selection Of Lead Counsel entered by this Court in *Van Dyke v. Wells Fargo & Co., et al.*, 08-1962 (JSW) on August 7, 2008.

3.    Attached hereto as **Exhibit B** is a true and correct copy of the Brief In Support Of Movants' Motion To Transfer For Coordination in the proceeding styled, *In re Auction Rate Securities (ARS) Marketing Litigation*, MDL No. 1979, now pending before the Judicial Panel on Multidistrict Litigation.

4.    On August 7, 2008, members of my firm spoke with counsel for plaintiffs in the other auction rate securities class actions pending against Bank of America:  *Bearman v. Bank of America Corp., et al.*, Case No. 08-1115 (DMS) (WMC) (S.D. Cal. filed June 23, 2008); *Cattell  v. Bank of America Corp., et al.*, Case No. 08-511 (GPM) (S.D. Ill. Filed July 17, 2008); and *Ben-Tal v. Bank of America Corp. et al.*, 08-4767 (MRP) (PLA) (C.D. Cal. filed July 21, 2008).  Plaintiffs' counsel in each of those actions authorized my firm to inform the Court that (1) they support appointment of the Sitrin Group as Lead Plaintiff and Girard Gibbs LLP as Lead Counsel, as set forth in the Court's August 5, 2008 Order, and (2) they will dismiss their actions without prejudice promptly, to allow the auction rate securities class action litigation against Bank of America to proceed only in the *Bondar* case pending before this Court.

///

///

///

///

///

DECLARATION OF AARON M. SHEANIN

1        5.     Given the nature of this administrative motion, it was not possible to obtain a stipulation

2    under Civil L.R.7-11(a) and Civil L.R. 7-12 with respect to the relief sought.

3

4        I declare under penalty of perjury under the laws of the United States of America that the

5    foregoing is true and correct.  Executed this 7th day of August, 2008 at San Francisco, California.

6

7                          */s/ Aaron M. Sheanin*

8                         Aaron M. Sheanin

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF AARON M. SHEANIN

**CERTIFICATE OF SERVICE**

I, Aaron M. Sheanin, hereby certify that on August 7, 2008, I caused the foregoing document to be filed electronically with the United States District Court for the Northern District of California's through the Court's mandated ECF service.  Counsel of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the document(s) upon confirmation of e-filing.

I also caused the foregoing document to be delivered via first-class mail on:

Eileen L. McGeever                      Corey D. Sullivan
**Rushall & McGeever**                   **Carey & DAnis, LLC**
6100 Innovation Way                     8235 Forsyth Blvd., Suite 1100
Carlsbad, CA  92009                     St. Louis, MO  63015

Shawn Khorrami                          *Counsel for Plaintiff Cattell*
**Khorrami Pollard & Abir LLP**
444 S. Flower Street, 33rd Floor
Los Angeles, CA  90071

*Counsel for Plaintiff Bearman*

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of August, 2008 at San Francisco, California.


                                    */s/ Aaron M. Sheanin*

EXHIBIT A

1

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7

8              FOR THE NORTHERN DISTRICT OF CALIFORNIA

9    LINDELL VAN DYKE, et al.

10            Plaintiffs,                      No. 08-01962 JSW

11    v.                                       **ORDER VACATING ORDER
                                               GRANTING PLAINTIFFS'**
12   WELLS FARGO AND CO., et al.               **MOTION FOR APPOINTMENT
                                               AS LEAD PLAINTIFF AND**
13            Defendants.                      **APPROVING LEAD PLAINTIFFS'
                                               SELECTION OF LEAD COUNSEL**
14
     _____/
15

16            On August 6, 2008, this Court issued an Order granting Plaintiffs uncontested Motion

17   for Appointment as Lead Plaintiff and Approving Lead Plaintiffs' Selection of Lead Counsel.

18   Upon review of the parties' stipulation regarding the resetting of deadlines and the case

19   management conference in this action, it has come to the Court's attention that this action is the

20   subject of a pending Motion to Transfer for Coordination before the Judicial Panel on Multi-

21   District Litigation with respect to *In re Auction Rate Securities Litigation (ARS) Marketing*

22   *Litigation*, MDL No. 1979.

23            "If more than one action on behalf of a class asserting substantially the same claim or

24   claims arising under this chapter has been filed, and any party has sought to consolidate those

25   actions for pretrial purposes or for trial, *the court shall not make the determination required by*

26   *clause (i) until after the decision on the motion to consolidate is rendered.*"  15 U.S.C. § 78u-

27   4(a)(B)(3)(ii) (emphasis added).

28   //

1    In light of the pending motion to transfer this matter to the pending MDL proceeding,

2    and given the requirements of 15 U.S.C. § 78u-4(a)(B)(3)(ii), the Court's Order granting

3    Plaintiffs' motion for appointment of lead counsel is VACATED pending a ruling on the motion

4    to transfer or pending a further showing from Plaintiffs that this Court has the authority to rule

5    on their motion before a decision is rendered in the MDL proceedings.

6    **IT IS SO ORDERED.**

7

8    Dated: August 7, 2008

9    _____
     JEFFREY S. WHITE
     UNITED STATES DISTRICT JUDGE

EXHIBIT B

BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE AUCTION RATE SECURITIES | ) | |
| BROKER-DEALER LITIGATION | ) | MDL DOCKET NO. _____ |

BRIEF IN SUPPORT OF MOVANTS'
MOTION TO TRANSFER FOR COORDINATION

"Auction rate securities" are municipal bonds, corporate bonds and preferred stocks with interest rates or dividend yields that were conceived to be reset through auctions every 7, 14, 28 or 35 days. Auction rate bonds are usually issued with maturities of 30 years, but the maturities can range from five years to perpetuity. Auction rate securities ("ARS") were initially sold exclusively to corporate money managers and institutional investors. Beginning in March 2005, changes in accounting standards made ARS less attractive to corporations. In order to find new buyers for ARS, the broker-dealers who underwrite ARS and manage the periodic reset auctions began marketing ARS to individual investors as an alternative to money market funds. ARS were

represented as safe, highly liquid cash management vehicles, as demonstrated by the fact that broker-dealers typically listed ARS as "cash equivalents" on periodic statements sent to customers. Some issued checkbooks to their customers to facilitate redemption.

The periodic auctions managed by the broker-dealers were intended to function as "Dutch Auctions." In practice, however, the broker-dealers systematically intervened in the auctions to ensure liquidity and manage interest rates.[1] By purchasing for their own accounts securities that would have otherwise gone unsold at auction, the broker-dealers prevented auctions from "failing." By manipulating the ARS resale market in this manner, the broker-dealers were able to maintain their coveted business of managing auctions and underwriting new issuances of ARS.

In mid-February 2008, the major broker-dealers, having intervened in auctions to prevent auction failures, collectively and simultaneously "withdrew their support" for the ARS market, refusing to meet customer demands to liquidate positions in ARS. The resulting failures of ARS auctions have led to the complete collapse of the ARS market. ARS holders who were promised a money market alternative are unable to recover their deposits. While some issuers of ARS have acted to redeem the securities, most have announced they have no plans to do so.

Following the collapse of the auction rate market, owners of ARS have filed over thirty lawsuits alleging that the ARS broker-dealers violated federal securities laws in

---

[1]     In 2006 and 2007, the Securities and Exchange Commission issued cease-and-desist orders against fourteen broker-dealers and three auction agents involved in auction rate securities. *See In the Matter of Bear, Sterns & Co. Inc., et al*, Securities Act of 1933 Release No. 8684, Administrative Proceeding File No. 3-12310, 2006 SEC LEXIS 1246 (May 31, 2006); *In the Matter of Deutsche Bank Trust Co. Americas, et al.*, Securities Act of 1933 Release No. 8767, Administrative Proceeding File No. 3-12526 (January 9, 2007). Both cease-and-desist orders acknowledge that broker-dealers and auction agents intervened in auctions to prevent auction failures, among other things. *In the Matter of Bear, Sterns*, 2006 SEC LEXIS 1246 at *13; *In the Matter of Deutsche Bank,* Release No. 8767, Section III(C)(2)(b)(1).

promoting sales of ARS and managing ARS auctions. Pursuant to 28 U.S.C. § 1407, plaintiffs in several of those cases now move to transfer the cases for purposes of coordinating proceedings against all defendants for pretrial purposes.

<u>**THE ARS LITIGATION**</u>

The following table (referred to below as "Table 1") shows the ARS cases presently pending against each corporate defendant family, and groups those cases by corporate affiliation.[2]

| CORPORATE FAMILY | CASE NAME | COURT |
|---|---|---|
| **UBS** | *Chandler v. UBS AG, et al.* | S.D. New York |
| | *Sanchez v. UBS AG, et al.*[3] | S.D. New York |
| | *Bonnist v. UBS AG, et al.* | S.D. New York |
| | *Kassover v. UBS AG, et al.* | S.D. New York |
| | *Parnass v. UBS AG, et al.* | C.D. California |
| **DEUTSCHE BANK** | *Kraemer v. Deutsche Bank AG, et al.* | S.D. New York |
| **MERRILL LYNCH** | *Burton v. Merrill Lynch Corp., et al.* | S.D. New York |
| | *Stanton v. Merrill Lynch & Co., et al.* | S.D. New York |
| **WACHOVIA** | *Waldman v. Wachovia Corp. et al.* | S.D. New York |
| **TD AMERITRADE** | *Humphrys v. TD Ameritrade Holding Corp., et al.* | S.D. New York |
| | *Silverstein v. TD Ameritrade Holding Corp., et al.* | D. Nebraska (transfer to S.D. New York ordered on June 10, 2008). |

---

[2]    Movants' Schedule of Actions is attached hereto as Exhibit 1.

[3]    *Sanchez* and *Chandler* have already been consolidated into one action by court order. *See Sanchez* Docket Sheet (Exhibit 3) at Doc. # 9; *Chandler* Docket Sheet (Exhibit 2) at Doc. # 13.

| CITIGROUP SMITH BARNEY | Swanson v. Citigroup, Inc., et al. | S.D. New York |
|---|---|---|
| | LHB Ins. Brokerage, Inc. v. Citigroup, Inc., et al. | S.D. New York |
| | Finn v. Smith Barney, et al. | S.D. New York |
| | Stockhamer, et al. v. Citigroup Inc., et al. | S.D. New York |
| | Wedgewood Tacoma LLC v. Citigroup Inc., et al. | S.D. New York |
| | Ghalayini v. Citigroup Inc., et al.[4] | S.D. New York |
| MORGAN STANLEY | Jamail v. Morgan Stanley, et al. | S.D. New York |
| | Miller v. Morgan Stanley & Co., Inc. | S.D. New York |
| JP MORGAN CHASE | Ciplet v. JP Morgan Chase, et al. | S.D. New York |
| E*TRADE | Oughtred v. E*Trade Financial Corp., et al. | S.D. New York |
| RAYMOND JAMES | Defer LP v. Raymond James Financial, Inc., et al. | S.D. New York |
| WELLS FARGO | Van Dyke, et al. v. Wells Fargo & Co., et al. | N.D. California |
| | Al-Thani v. Wells Fargo & Co., et al. | N.D. California |
| | Walters, et al. v. Wells Fargo & Co., et al. | W.D. Texas |
| SUNTRUST | Zisholtz v. Sun Trust Banks, Inc., et al. | N.D. Georgia |
| OPPENHEIMER | Grossman, et al. v. Oppenheimer & Co., et al. | S.D. New York |
| | Vining v. Oppenheimer Holdings, Inc., et al. | S.D. New York |
| GOLDMAN SACHS | Milch v. The Goldman Sachs Group, Inc., et al. | S.D. New York |
| ROYAL BANK OF CANADA | Brigham v. Royal Bank of Canada, et al. | S.D. New York |
| BANK OF AMERICA | Bondar v. Bank of America Corp., et al. | N.D. California |

---

[4]    The Complaint for *Ghalayini* was not available on the Southern District of New York's ECF program when Movants compiled the exhibits in support of their Motion. *See Ghalayini* Docket Sheet (Exhibit 17).

The undersigned counsel represent Plaintiffs in thirteen of the actions listed above: *Chandler, Kraemer, Burton, Waldman, Humphrys, Swanson, Jamail, Oughtred, Defer LP, Van Dyke, Vining, Brigham* and *Bondar.*

### The ARS Cases Share a Similar Posture.

All of the cases in Table 1 are in a similar procedural posture, having been filed in the last few months. Other than issuing preliminary scheduling orders and handling other routine matters, no court has issued any rulings affecting the merits of the litigation in any of the cases identified in Table 1. Indeed, the parties have not submitted any substantive motions to the courts, with the exception of motions for lead plaintiff in various matters as mandated by the Private Securities Litigation Reform Act ("PSLRA"), and a motion to dismiss filed by the defendant in *Zisholtz.* The *Zisholtz* plaintiff has not yet filed his response to the motion, and there is no indication the court has expended resources on the motion. *See Zisholtz* Docket Sheet (Exhibit 26). Because all of the cases identified for transfer herein were filed at or around the same time period, they are all in preliminary procedural stages, no particular case has materially advanced any further than the others, they all share a similar scheduling track, and no court has expended considerable time or resources on any particular case.[5]

---

[5]     *Chandler* Docket Sheet (Exhibit 2); *Sanchez* Docket Sheet (Exhibit 3); *Bonnist* Docket Sheet (Exhibit 4); *Kassover* Docket Sheet (Exhibit 5); *Kraemer* Docket Sheet (Exhibit 6); *Burton* Docket Sheet (Exhibit 7); *Stanton* Docket Sheet (Exhibit 8); *Waldman* Docket Sheet (Exhibit 9); *Humphrys* Docket Sheet (Exhibit 10); *Silverstein* Docket Sheet (Exhibit 11); *Swanson* Docket Sheet (Exhibit 12); *LHB Ins. Brokerage* Docket Sheet (Exhibit 13); *Finn* Docket Sheet (Exhibit 14); *Stockhamer* Docket Sheet (Exhibit 15); *Wedgewood* Docket Sheet (Exhibit 16); *Ghalayini* Docket Sheet (Exhibit 17); *Jamail* Docket Sheet (Exhibit 18); *Miller* Docket Sheet (Exhibit 19); *Ciplet* Docket Sheet (Exhibit 20); *Oughtred* Docket Sheet (Exhibit 21); *Defer* Docket Sheet (Exhibit 22); *Van Dyke* Docket Sheet (Exhibit 23); *Al-Thani* Docket Sheet (Exhibit 24); *Walters* Docket Sheet (Exhibit 25); *Zisholtz* Docket Sheet (Exhibit 26); *Grossman* Docket Sheet (Exhibit 27); *Vining* Docket Sheet (Exhibit 28); *Milch* Docket Sheet (Exhibit 29); *Brigham* Docket Sheet (Exhibit 30); *Bondar* Docket Sheet (Exhibit 31); *Parnass* Docket Sheet (Exhibit 32).

Like the courts presiding over the subject actions, none of the parties have expended substantial resources or time litigating any of the cases because the parties have not engaged in any discovery.[6]  Although the plaintiffs have filed motions seeking appointment of lead plaintiffs under the PSLRA in a number of cases, only one court has ruled on that issue – on June 11, 2008, the Court in *Oughtred v. E\*Trade Fin. Corp.* appointed Movants' Counsel as Lead Counsel.[7]  Where there are multiple plaintiffs seeking lead plaintiff status in a particular case, none of those motions are ripe for consideration because they are not fully briefed.

### The ARS Cases Share Common Factual Allegations and Types of Parties.

In addition to sharing a common procedural posture, all of the cases share common factual allegations.  Plaintiffs allege that defendants uniformly marketed ARS as cash-equivalent, highly liquid investments suitable for short-term investing, while failing to inform their customers of the extent of their role in sustaining the ARS market, of adverse developments affecting the viability of ARS, and other facts material to a decision to invest in ARS.[8]  Plaintiffs further allege that defendants acted in concert to

---

[6] This contrasts with the exceptional amount of time and resources expended collectively by counsel for Movants in connection with their pre- and post-filing investigation, including extensive telephone and in-person interviews with many hundreds of individuals whose assets have been immobilized by the auction rate market collapse.

[7] Movants have sought or will seek appointment as lead plaintiffs in most of the pending cases and expect that these motions may be resolved during the pendency of this Motion.

[8] *Chandler* Complaint (Exhibit 2) at ¶ 33; *Sanchez* Complaint (Exhibit 3) at ¶ 3; *Bonnist* Complaint (Exhibit 4) at ¶ 36; *Kassover* Complaint (Exhibit 5) at ¶ 24; *Kraemer* Complaint (Exhibit 6) at ¶ 32; *Burton* Complaint (Exhibit 7) at ¶ 32; *Stanton* Complaint (Exhibit 8) at ¶ 3; *Waldman* Complaint (Exhibit 9) at ¶ 32; *Humphrys* Complaint (Exhibit 10) at ¶ 32; *Silverstein* Complaint (Exhibit 11) at ¶ 3; *Swanson* Complaint (Exhibit 12) at ¶ 33; *LHB Ins. Brokerage* Complaint (Exhibit 13) at ¶ 3; *Wedgewood* Complaint (Exhibit 16) at ¶ 3; *Jamail* Complaint (Exhibit 18) at ¶ 32; *Miller* Complaint (Exhibit 19) at ¶ 3; *Ciplet* Complaint (Exhibit 20) at ¶ 2; *Oughtred* Complaint (Exhibit 21) at ¶ 32; *Defer* Complaint (Exhibit 22) at ¶ 33; *Van Dyke* Complaint (Exhibit 23) at ¶ 32; *Al-Thani* Complaint (Exhibit 24) at ¶ 14; *Walters* Complaint (Exhibit 25) at ¶ 7; *Zisholtz* Complaint (Exhibit 26) at ¶ 3; *Grossman* Complaint (Exhibit 27) at ¶ 29; *Vining* Complaint (Exhibit 28) at ¶ 33; *Milch* Complaint (Exhibit 29) at ¶ 2; *Brigham* Complaint (Exhibit 30) at ¶ 33; *Bondar* Complaint (Exhibit 31) at ¶ 33; *Parnass* Complaint (Exhibit 32) at ¶ 12.

manipulate the ARS market by intervening to prevent auction failures until their interests were no longer served by doing so, when they simultaneously withdrew their support, triggering a complete collapse of the ARS market.

In addition to common factual allegations, all the auction rate cases identified in Table 1 share common categories of parties, in that all plaintiffs are investors who purchased ARS, and the defendants are broker-dealers (or employees of the broker-dealers) who sold ARS.[9]

### The Auction Rate Cases Share Common Legal Claims and Theories.

The ARS cases share several overlapping legal theories. For example, the vast majority of the cases assert violations of section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5.[10] Similarly, several of the cases assert violations of section 20(a)

---

[9]     *Chandler* Complaint (Exhibit 2) at ¶¶ 8-11; *Sanchez* Complaint (Exhibit 3) at ¶¶ 14-17; *Bonnist* Complaint (Exhibit 4) at ¶¶ 10-13; *Kassover* Complaint (Exhibit 5) at ¶¶ 10-12; *Kraemer* Complaint (Exhibit 6) at ¶¶ 8-10; *Burton* Complaint (Exhibit 7) at ¶¶ 8-10; *Stanton* Complaint (Exhibit 8) at ¶¶ 14-16; *Waldman* Complaint (Exhibit 9) at ¶¶ 8-10; *Humphrys* Complaint (Exhibit 10) at ¶¶ 8-10; *Silverstein* Complaint (Exhibit 11) at ¶¶ 14-16; *Swanson* Complaint (Exhibit 12) at ¶¶ 8-11; *LHB Ins. Brokerage* Complaint (Exhibit 13) at ¶¶ 14-16; *Finn* Complaint (Exhibit 14) at ¶¶ 5-7; *Stockhamer* Complaint (Exhibit 15) at ¶¶ 10-12; *Wedgewood* Complaint (Exhibit 16) at ¶¶ 12-15; *Jamail* Complaint (Exhibit 18) at ¶¶ 8-10; *Miller* Complaint (Exhibit 19) at ¶¶ 14-15; *Ciplet* Complaint (Exhibit 20) at ¶¶ 9-11; *Oughtred* Complaint (Exhibit 21) at ¶¶ 8-10; *Defer* Complaint (Exhibit 22) at ¶¶ 8-11; *Van Dyke* Complaint (Exhibit 23) at ¶¶ 8-10; *Al-Thani* Complaint (Exhibit 24) at ¶¶ 3-8; *Walters* Complaint (Exhibit 25) at ¶¶ 3-6; *Zisholtz* Complaint (Exhibit 26) at ¶¶ 14-16; *Grossman* Complaint (Exhibit 27) at ¶¶ 9-13; *Vining* Complaint (Exhibit 28) at ¶¶ 8-11; *Milch* Complaint (Exhibit 29) at ¶¶ 8-9; *Brigham* Complaint (Exhibit 30) at ¶¶ 8-11; *Bondar* Complaint (Exhibit 31) at ¶¶ 8-11; *Parnass* Complaint (Exhibit 32) at ¶¶ 1-2.

[10]     *Chandler* Complaint (Exhibit 2) at ¶¶ 47-56; *Sanchez* Complaint (Exhibit 3) at ¶¶ 75-81; *Bonnist* Complaint (Exhibit 4) at ¶¶ 49-58; *Kraemer* Complaint (Exhibit 6) at ¶¶ 46-55; *Burton* Complaint (Exhibit 7) at ¶¶ 46-55; *Stanton* Complaint (Exhibit 8) at ¶¶ 73-79; *Waldman* Complaint (Exhibit 9) at ¶¶ 46-55; *Humphrys* Complaint (Exhibit 10) at ¶¶ 46-55; *Silverstein* Complaint (Exhibit 11) at ¶¶ 72-78; *Swanson* Complaint (Exhibit 12) at ¶¶ 47-56; *LHB Ins. Brokerage* Complaint (Exhibit 13) at ¶¶ 75-81; *Finn* Complaint (Exhibit 14) at ¶¶ 19-40; *Wedgewood* Complaint (Exhibit 16) at ¶¶ 73-84; *Jamail* Complaint (Exhibit 18) at ¶¶ 46-55; *Miller* Complaint (Exhibit 19) at ¶¶ 72-78; *Ciplet* Complaint (Exhibit 20) at ¶¶ 53-63; *Oughtred* Complaint (Exhibit 21) at ¶¶ 46-55; *Defer* Complaint (Exhibit 22) at ¶¶ 47-56; *Van Dyke* Complaint (Exhibit 23) at ¶¶ 45-54; *Al-Thani* Complaint (Exhibit 24) at ¶¶ 30-36; *Walters* Complaint (Exhibit 25) at ¶¶ 13-20; *Zisholtz* Complaint (Exhibit 26) at ¶¶ 74-80; *Grossman* Complaint (Exhibit 27) at ¶¶ 50-59; *Vining* Complaint (Exhibit 28) at ¶¶ 47-56; *Milch* Complaint (Exhibit 29) at ¶¶ 46-55; *Brigham* Complaint (Exhibit 30) at ¶¶ 47-56; *Bondar* Complaint (Exhibit 31) at ¶¶ 47-56.

of the 1934 Act.[11]  Although a handful of the Complaints seek additional remedies beyond section 10(b) and section 20(a) claims, the ancillary claims are still premised on the same underlying facts and alleged wrongful conduct.

The vast majority of the cases in Table 1 also plead their claims as class actions under Fed. R. Civ. P. 23.[12] To the limited extent certain complaints plead claims only on behalf of the individual plaintiff named in the complaint, those complaints also pursue section 10(b) and section 20(a) claims, as well as additional legal claims premised on state law.[13]

## ARGUMENT

Section 1407 authorizes transfer and coordination of proceedings pending in different courts where there are "common questions of fact" and transfer "will be for the

---

[11]    *Chandler* Complaint (Exhibit 2) at ¶¶ 57-59; *Sanchez* Complaint (Exhibit 3) at ¶¶ 82-85; *Bonnist* Complaint (Exhibit 4) at ¶¶ 59-61; *Kraemer* Complaint (Exhibit 6) at ¶¶ 56-58; *Burton* Complaint (Exhibit 7) at ¶¶ 56-58; *Stanton* Complaint (Exhibit 8) at ¶¶ 80-83; *Waldman* Complaint (Exhibit 9) at ¶¶ 56-58; *Humphrys* Complaint (Exhibit 10) at ¶¶ 56-58; *Silverstein* Complaint (Exhibit 11) at ¶¶ 79-82; *Swanson* Complaint (Exhibit 12) at ¶¶ 57-60; *LHB Ins. Brokerage* Complaint (Exhibit 13) at ¶¶ 82-85; *Wedgewood* Complaint (Exhibit 16) at ¶¶ 85-87; *Jamail* Complaint (Exhibit 18) at ¶¶ 56-58; *Ciplet* Complaint (Exhibit 20) at ¶¶ 64-68; *Oughtred* Complaint (Exhibit 21) at ¶¶ 56-58; *Defer* Complaint (Exhibit 22) at ¶¶ 57-59; *Van Dyke* Complaint (Exhibit 23) at ¶¶ 55-57; *Al-Thani* Complaint (Exhibit 24) at ¶¶ 43-47; *Walters* Complaint (Exhibit 25) at ¶¶ 26-29; *Zisholtz* Complaint (Exhibit 26) at ¶¶ 81-84; *Grossman* Complaint (Exhibit 27) at ¶¶ 60-65; *Vining* Complaint (Exhibit 28) at ¶¶ 57-59; *Milch* Complaint (Exhibit 29) at ¶¶ 56-58; *Brigham* Complaint (Exhibit 30) at ¶¶ 57-59; *Bondar* Complaint (Exhibit 31) at ¶¶ 57-59.

[12]    *Chandler* Complaint (Exhibit 2) at ¶¶ 13-19; *Sanchez* Complaint (Exhibit 3) at ¶¶ 19-24; *Bonnist* Complaint (Exhibit 4) at ¶¶ 15-21; *Kassover* Complaint (Exhibit 5) at ¶¶ 14-19; *Kraemer* Complaint (Exhibit 6) at ¶¶ 12-18; *Burton* Complaint (Exhibit 7) at ¶¶ 12-18; *Stanton* Complaint (Exhibit 8) at ¶¶ 17-22; *Waldman* Complaint (Exhibit 9) at ¶¶ 12-18; *Humphrys* Complaint (Exhibit 10) at ¶¶ 12-18; *Silverstein* Complaint (Exhibit 11) at ¶¶ 18-23; *Swanson* Complaint (Exhibit 12) at ¶¶ 13-19; *LHB Ins. Brokerage* Complaint (Exhibit 13) at ¶¶ 18-23; *Stockhamer* Complaint (Exhibit 15) at ¶¶ 13-18; *Wedgewood* Complaint (Exhibit 16) at ¶¶ 17-23; *Jamail* Complaint (Exhibit 18) at ¶¶ 12-18; *Miller* Complaint (Exhibit 19) at ¶¶ 16-21; *Ciplet* Complaint (Exhibit 20) at ¶¶ 13-18; *Oughtred* Complaint (Exhibit 21) at ¶¶ 12-18; *Defer* Complaint (Exhibit 22) at ¶¶ 13-19; *Van Dyke* Complaint (Exhibit 23) at ¶¶ 12-18; *Zisholtz* Complaint (Exhibit 26) at ¶¶ 18-23; *Grossman* Complaint (Exhibit 27) at ¶¶ 43-49; *Vining* Complaint (Exhibit 28) at ¶¶ 13-19; *Milch* Complaint (Exhibit 29) at ¶¶ 11-18; *Brigham* Complaint (Exhibit 30) at ¶¶ 13-19; *Bondar* Complaint (Exhibit 31) at ¶¶ 13-19; *see also Parnass* Complaint (Exhibit 32) at ¶¶ 4-8 (purporting to allege an opt-out class action under California Code of Civil Procedure § 382).

[13]    *See Walters* Complaint (Exhibit 25); *Finn* Complaint (Exhibit 14); *Al-Thani* Complaint (Exhibit 24).

convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). "The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 20.131 (2004) (citing *In re Plumbing Fixture Cases*, 298 F. Supp. 484 (J.P.M.L. 1968)). For the reasons set forth below, the ARS litigation is particularly appropriate for transfer and coordination under section 1407.

### *The ARS Cases Involve Common Questions of Fact and Law.*

Given the plaintiffs' allegations of pervasive manipulation in the offer and sale of ARS, there can be little doubt that common questions of fact and law will dominate the underlying cases.

Common questions of fact that are universal to all defendants in all actions identified herein include, but are not limited to:

- how the auctions functioned, including the process by which bids were submitted, and the extent to which defendants deviated from their purported auction procedures;

- whether the defendants either individually or jointly affirmatively misrepresented and/or omitted material facts related to ARS;

- whether the defendants either individually or jointly manipulated and artificially inflated the market for ARS; and

- whether the defendants expressly or tacitly agreed to support the ARS market and prevent failed auctions, and eventually agreed to discontinue their support for the ARS market in February 2008, thereby causing a collapse of the market.

These and other factual questions are common to all the defendants, and coordinating the cases in a single district will facilitate the efficient resolution of these questions while minimizing the risk of inconsistent rulings.

Similarly, there are questions of law that are common to all the ARS cases identified in Table 1, including (1) the applicability of section 10(b) and Rule 10b-5 of the Exchange Act to plaintiffs' claims; (2) the applicability of section 20(a) of the Exchange Act to plaintiffs' claims; and (3) the applicability of the Investment Advisor's Act; and (4) the applicability of various defenses to plaintiffs' claims. Additionally, a critical issue in many of the cases will be whether plaintiffs' claims satisfy the requirements of Fed. R. Civ. 23 – an issue that is particularly well-suited for coordinated treatment given the disarray that would emanate from inconsistent rulings on that point. Movants have plainly demonstrated common questions of fact and law, and transfer under section 1407 is appropriate.[14]

To the limited extent they exist, variations in legal theories or parties do not defeat transfer under section 1407. The Panel has consistently granted requests for transfer even where the underlying cases were brought against varying defendants under different legal theories. *See In re Kugel Mesh*, 493 F. Supp. 2d at 1371 (centralizing cases involving different types of defects and different causes of action against different defendants); *In re Janus Mutual Funds Investment Litig.*, 310 F. Supp. 2d 1359 (J.P.M.L. 2004) (centralizing cases alleging market timing/late trading against six different mutual fund families into one proceeding under section 1407, even though the non-moving

---

[14]    Movants' burden of demonstrating common questions of fact and law is not a difficult standard to satisfy. "Transfer under Section 1407 *does not require* a complete identity or *even a majority of common factual or legal issues* as a prerequisite to transfer." *In re Kugel Mesh Hernia Patch Products Liability Litig.*, 493 F. Supp. 2d 1371, 1373 (J.P.M.L. 2007) (emphasis added).

parties requested fund-specific centralization based on "unique questions of fact relating to each mutual fund family"); *In re Immunex Corp. Average Wholesale Price Litig.*, 201 F. Supp. 2d 1378 (J.P.M.L. 2002) (centralizing cases against different pharmaceutical companies based on fraudulent marketing into one coordinated proceeding); *In re Multi-Piece Rims Products Liability Litig.*, 464 F. Supp. 969 (J.P.M.L. 1979) (centralizing cases alleging defective tire rims against different defendants based on common facts and evidence within the industry, including the engineering principles underlying the design of the rims).

The Panel's holdings in *Janus* and *Immunex* are especially instructive in the context of the ARS litigation. As in the ARS cases, both *Janus* and *Immunex* involved allegations of industry-wide misconduct in business and financial markets.

In *Janus*, the plaintiffs alleged that six different families of mutual funds engaged in improper market timing or late trading. The mutual fund families opposed coordination in a single proceeding and instead asserted that coordination should have been conducted on a fund-by-fund basis because "the presence of unique questions of fact relating to each mutual fund family should produce a different result." *In re Janus*, 310 F. Supp. 2d at 1361.

The Panel rejected this argument, noting that "all actions can be expected to focus on similar mutual fund trading practices and procedures" and that "[r]esolution of overlapping issues, concerning similar conduct in the mutual fund industry, will be streamlined." *Id.* (internal citation omitted). To the extent variations may exist, the Panel held:

[T]ransfer to a single district under section 1407 has the salutary effect of placing all mutual fund market timing/late trading actions before one court which can formulate a pretrial program that:

(1) allows pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues; and

(2) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties.

We note that the . . . transferee court can employ any number of pretrial techniques – such as establishing separate discovery and/or motion tracks for each mutual fund family and/or separate tracks for the different types of actions involved – to efficiently manage this litigation. In any event, we leave the extent and manner of coordination or consolidation of these . . . claims . . . to the discretion of the transferee court.

*Id.* (citing *In re Multi-Piece*, 464 F. Supp. at 974).

The lesson from *Janus* is that allegations of industry-wide misconduct – and the common questions of fact that relate to those allegations – can form the basis of a centralized proceeding under section 1407. Where non-common issues or parties are present, the Panel leaves it to the discretion of the transferee court to craft a suitable pretrial discovery plan to manage those distinguishing characteristics as the judge sees fit.

Like *Janus*, the allegations in *Immunex* were premised on an alleged industry-wide practice, this time by pharmaceutical companies to inflate the average wholesale price of their Medicare covered prescription drugs in order to inflate the sales of the drugs and thereby boost the companies' profits. The defendants in *Immunex* argued that coordination should be on a company-by-company basis because "the presence of unique questions of fact relating to each pharmaceutical defendant should produce a different result in order to avoid an unwieldy situation." *In re Immunex*, 201 F. Supp. 2d at 1380. Relying on the same language cited in the *Janus* opinion and set forth above, the Panel

rejected this argument and held that coordination in a single multi-district proceeding was appropriate.

Plaintiffs' allegations in the underlying cases are analogous to the allegations in *Janus* and *Immunex*, and the Panel should grant Movants' Motion on the same grounds as transfer was granted in those cases. Plaintiffs in the underlying ARS cases universally allege an industry-wide practice by broker-dealers to manipulate the auction market for their own benefit. Plaintiffs universally allege an industry-wide practice by broker-dealers to affirmatively misrepresent and omit material facts related to the true nature of ARS and the auction rate market. Like the claims in *Janus* and *Immunex*, the plaintiffs' claims in the ARS cases are well-suited for coordinated treatment under section 1407. *Janus* and *Immunex* instruct that the presence of different defendants or slightly different legal theories do not defeat coordination; such distinctions are left for the transferee court to resolve and are not an adequate basis to deny transfer where common questions of fact exist in the underlying cases.[15] Movants have satisfied the "common question of fact" requirement of section 1407, and the Panel should grant the Motion.

### *Movants Satisfy the Other Factors Set Forth in Section 1407.*

Having fulfilled the threshold requirement of demonstrating a "common question of fact" under section 1407, Movants also satisfy the requirement that transfer "will be

---

[15] *See also In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. 651, 655 (J.P.M.L. 1981) ("The transferee judge, of course, has the authority to schedule discovery and other pretrial proceedings on any issues unique to a particular action or party to proceed in separate tracks concurrently with the common pretrial proceedings, thus enhancing the efficient conduct of all aspects of this litigation. Moreover, the transferee judge has the power to provide that no party need participate in pretrial proceedings unrelated to that party's interests.") (internal citations omitted); *see also In re Pharmaceutical Indus. Average Wholesale Price Litig.*, 460 F. Supp. 2d 277, 278 (D. Mass. 2006) (transferee court organized defendant pharmaceutical companies into two tracks for pretrial proceedings while also making determination for all defendants as to the meaning of the term "average wholesale price" under Medicare Act).

for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).

Transfer to the Southern District of New York will further the convenience of the parties and witnesses because the majority of the defendants have their corporate headquarters within that jurisdiction, and many of the key managerial witnesses and documents are located within that district.[16] The ARS were underwritten in New York, the auctions were conducted in New York, and the corporate marketing campaigns to promote the sale of ARS were typically directed from New York. Thus, the Southern District of New York is a convenient forum for a coordinated proceeding. *See In re Vonage Init. Public Offering Sec. Litig.*, 471 F. Supp. 2d 1354, 1356 (J.P.M.L. 2007) (noting that the presence of the defendant's corporate headquarters in the transferee forum was a factor supporting transfer); *In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. at 655 (noting that key witnesses and relevant documents are located in the same location as the defendant's corporate headquarters, thereby justifying transfer to that forum). One of the Defendants, Citigroup, filed a motion on June 3, 2008 with this Panel for an order transferring the Citigroup ARS cases filed around the country to Judge

---

[16]    *Chandler* Complaint (Exhibit 2) at ¶ 10; *Sanchez* Complaint (Exhibit 3) at ¶ 16; *Bonnist* Complaint (Exhibit 4) at ¶¶ 11 and 13; *Kassover* Complaint (Exhibit 5) at ¶¶ 11-12; *Kraemer* Complaint (Exhibit 6) at ¶ 10; *Burton* Complaint (Exhibit 7) at ¶¶ 9-10; *Stanton* Complaint (Exhibit 8) at ¶ 15; *Swanson* Complaint (Exhibit 12) at ¶¶ 9-11; *LHB Ins. Brokerage* Complaint (Exhibit 13) at ¶ 15; *Stockhamer* Complaint (Exhibit 15) at ¶¶ 11-12; *Wedgewood* Complaint (Exhibit 16) at ¶¶ 13-15; *Jamail* Complaint (Exhibit 18) at ¶¶ 9-10; *Miller* Complaint (Exhibit 19) at ¶ 15; *Ciplet* Complaint (Exhibit 20) at ¶¶ 10-11; *Oughtred* Complaint (Exhibit 21) at ¶¶ 9-10; *Grossman* Complaint (Exhibit 27) at ¶¶ 10-12; *Vining* Complaint (Exhibit 28) at ¶¶ 10-11; *Milch* Complaint (Exhibit 29) at ¶ 9; *Brigham* Complaint (Exhibit 30) at ¶ 11.

14

Swain of the Southern District of New York, so it is apparent that the proposed transferee district is acceptable to at least one defendant.[17]

Of the thirty-one pending cases that Movants seek to transfer, twenty-five are pending or have been ordered transferred to the Southern District of New York, making that district a logical transferee forum for the remaining six cases. The Southern District cases are presently assigned to eleven judges within the District. Although any of the eleven judges is surely qualified to preside over this litigation, Movants submit the following information for the Panel's consideration in selecting an appropriate transferee judge.

The earliest filed case, *Kassover v. UBS Financial Services, Inc., et al.*, Case No. 08-cv-2753, is assigned to the Hon. Lawrence M. McKenna. The parties appeared for a preliminary status conference in the litigation on May 6, 2008. During the conference, Judge McKenna informally inquired as to the probability of a coordinated MDL proceeding in the ARS litigation. In response to plaintiffs' counsel's comment that a motion before this Panel was under consideration, Judge McKenna appeared to indicate that he would not welcome assignment of a coordinated proceeding in this matter. Judge McKenna is also currently overseeing *In re Adelphia Communications Corp. Securities & Derivative Litig. (No. II)*, MDL No. 1529.

The second filed case (*Kraemer v. Deutsche Bank*) is assigned to the Hon. Loretta A. Preska, who has been assigned two later-filed ARS cases against Merrill Lynch, *Burton v. Merrill Lynch & Co., Inc. et al.*, Case No. 08-cv-3037 and *Stanton v. Merrill Lynch & Co., et al.*, Case No. 08-cv-3054, as well as two later-filed ARS cases against

---

[17]    Citigroup has notified the Panel of its intent to withdraw its previously filed Motion for Consolidation.

Oppenheimer, *Vining v. Oppenheimer Holdings Inc.*, Case No. 08-cv-4435 and *Grossman v. Oppenheimer & Co. Inc*, Case No. 08-cv-3528. Judge Preska currently is presiding over two MDL matters, *In re Digital Music Antitrust Litig.*, MDL No. 1780 (motion for leave to file Third Amended Complaint pending) and *In re Nortel Networks Corp. Sec. Litig.*, MDL No. 1659 (distributing class settlement proceeds).

Judge Preska's husband, Thomas J. Kavaler, is a senior partner at Cahill Gordon & Reindel. *In re Digital Music Antitrust Litig.*, MDL No. 1780, 2007 U.S. Dist. LEXIS 13567, *3 (S.D.N.Y. February 27, 2007) (Preska, J.). According to the firm's website, the firm has "long and close working relationships" with eight of the fifteen banks that are the subject of these proceedings, including Bank of America, Citigroup, Deutsche Bank, Goldman Sachs, JP Morgan Chase, Merrill Lynch, UBS and Wachovia.[18] The number and depth of these relationships could raise recusal issues under 28 U.S.C. § 455.

In the *Merrill Lynch* actions, Judge Preska notified the parties on April 2 that her husband's law firm, Cahill Gordon & Reindel LLP, "from time to time represents Merrill Lynch and/or its affiliates, and he works on those matters." *See* Exhibit 33 at pp. 1 and 2. On April 21, Judge Preska issued a Corrected Memorandum informing the parties that "the law firm in which my husband is a partner, Cahill Gordon & Reindel LLP, from time to time represents Merrill Lynch and/or its affiliates, and he does <u>not</u> work on those matters." *See* Exhibit 33 at p. 8 (emphasis in original).[19] Based on the Corrected Memorandum and the similar Memorandum issued in the *Deutsche Bank* case, Movants have not sought to recuse Judge Preska in the *Merrill Lynch* or *Deutsche* actions. Movants note, however, that Mr. Kavaler currently represents Wachovia in a case styled

---

[18]    *See* http://www.cahill.com/practices/020, last visited on June 12, 2008.

[19]    The Court issued a similar memorandum in the *Deutsche Bank* case. *See* Exhibit 33 at p. 9.

*Serio, et al. v. Wachovia Securities LLC,* 06-4681-DMC (D.N.J.), in which Movant's counsel Steven A. Weiss represents the plaintiff.[20]

In MDL No. 1780, Judge Preska ruled that a party's failure to raise recusal issues before this panel supported a finding that the transferee plaintiffs had waived their recusal rights. *See In re Digital Music Antitrust Litig.,* 2007 U.S. Dist. LEXIS 13567, at *7 (failure to raise potential recusal issues with MDL Panel made later motion to recuse based on husband's involvement in arguably related litigation untimely). In light of Judge Preska's decision in *Digital Music,* Movants respectfully reserve their rights to seek recusal with regard to any of the remaining defendants serviced by the Cahill firm.

For the reasons discussed above, the Southern District of New York appears to be the most convenient forum for the parties and witnesses in the ARS litigation. Movants note, however, that there are two cases pending in the Northern District of California, both assigned to the Hon. Jeffrey S. White. Should the Panel find that docket congestion, litigation expense or other considerations make transfer to another district desirable, Movants suggest transfer to Judge White of the Northern District of California, or any other judge with "the ability and temperament to steer this complex litigation on a steady and expeditious course." *See, e.g., In re Microsoft Corp. Windows Operating Sys. Antitrust Litig.,* MDL No. 1332, 2000 U.S. Dist. LEXIS 5559 (J.P.M.L. Apr. 25, 2000); *In re Bridgestone/Firestone, Inc., ATX, ATX II, & Wilderness Tires Prods. Liab. Litig.,* MDL No. 1373, 2000 U.S. Dist. LEXIS 15926 (J.P.M.L. Oct. 24, 2000).

---

[20]    The *Wachovia* ARS litigation is currently assigned to the Hon. Shira A. Scheindlin.

<u>CONCLUSION</u>

For the reasons set forth herein, Movants respectfully request that the Panel grant their Motion to Transfer for Coordination, and grant such other relief the Panel deems just and proper.

Dated: June 12, 2008

**STUEVE SIEGEL HANSON LLP**

Norman E. Siegel
Matthew L. Dameron
460 Nichols Road, Suite 200
Kansas City, MO 64112
(816) 714-7100
(816) 714-7101 (fax)
siegel@stuevesiegel.com
dameron@stuevesiegel.com

**GIRARD GIBBS LLP**
Daniel C. Girard
Jonathan K. Levine
Aaron M. Sheanin
601 California St, Suite 1400
San Francisco, CA 94108
(415) 981-4800
(415) 981-4846 (fax)
dcg@girardgibbs.com
jkl@girardgibbs.com
ams@girardgibbs.com

**SEEGER WEISS LLP**
Christopher Adam Seeger
Stephen A. Weiss
David R. Buchanan
One William Street, 10th Floor
New York, NY 10004
(212) 584-0757
(212) 584-0799 (fax)
cseeger@seegerweiss.com
sweiss@seegerweiss.com
dbuchanan@seegerweiss.com